Leslie LOGAN et al., Appellants,

v.

**SECRETARY OF STATE et al.**

No. 76–1139.

United States Court of Appeals,
District of Columbia Circuit.

Dec. 3, 1976.
Rehearing Denied Dec. 28, 1976.

Edward L. Merrigan, Washington, D. C., was on the brief for appellants.

Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Morton Hollander and Bruno A. Ristau, Attys., Dept. of Justice, Washington, D. C., were on the brief for appellees.

Before McGOWAN, LEVENTHAL and ROBB,* Circuit Judges.

PER CURIAM:

This appeal is from an order of the district court granting appellee's ("the Government's") motion to dismiss the action on the ground that it "constitutes an unconsented suit against the United States and, further, presents only non-justiciable, political questions."

* Circuit Judge Robb did not participate in this case.

Appellants brought their class action on behalf of 2,623 United States citizens (and five corporations) whose property in Czechoslovakia had been nationalized without compensation by the Czechoslovakian government, following World War II. In 1949, pursuant to Title IV of the International Claims Settlement Act of 1949, as amended (22 U.S.C. § 1642 *et seq.*), the Foreign Claims Settlement Commission of the United States issued to appellants and members of their class certified awards of specified monetary sums, entitling them to compensation from Czechoslovakia for property nationalized by that government. The 2,630 awards granted totaled $113,645,-205. The amount distributed to claimants was $8,540,768.[1]

In their complaint, appellants sought a declaratory judgment establishing their entitlement to certain assets in which Czechoslovakia has an interest. Specifically, they asked the district court to declare that certain monetary gold held and controlled in the Federal Reserve Bank in New York and the Bank of England in London by the three governments comprising the Tripartite Commission for the Restitution of Monetary Gold (the United States, United Kingdom, and France) is the property of the Government of Czechoslovakia.[2] With respect to the portion of the gold physically held in the United States, appellants further sought a declaration that the proceeds of that gold should be used to satisfy the unpaid portions of the awards granted under the Czechoslovakian Claims Program. Appellants sought the same relief with respect to certain other assets in the United States, in which Czechoslovakia or Czechoslovakian nationals have an interest, and which, since the early 1950's, have been frozen or blocked pursuant to the Trading with the Enemy Act, as amended, 50 U.S.C. App. § 1 *et seq.* Appellants also sought to have Czechoslovakia's share of the gold in England transferred to the United States and made available to satisfy the unpaid portions of their awards.

The Government has asked for expedition of the appeal, reciting diplomatic reasons. Since we find the issues to be capable of prompt resolution, and not to be such as to require oral argument, we grant the Government's motion, invoke our Rule 11(e) providing for disposition without argument, in appropriate cases, and provide for summary affirmance.

We shall not tarry with the question of whether to some extent there might be jurisdiction to maintain such a suit, or at least some part of it, or whether the recent passage of S. 800, and its emergence into law as P.L. 94-574 (Oct. 21, 1976) would warrant a remand for further inquiry into jurisdiction.

We are satisfied that the question presented by appellants is clearly one that must be addressed to the political branch of the government, and that is where relief must be sought. Questions in which foreign governments are interested are typically non-justiciable in domestic courts of the United States unless first agreements have been reached or statutes passed, and second, these are of such a nature as to confer rights on private persons that are contemplated for judicial enforcement.[3]

Plaintiff-appellants complain that unless the courts grant relief they are without remedy. Perhaps we can do no better

1. Appellant *Leslie Logan* was granted an award of $38,056.10, while Stanley Logan was granted an award of $38,866.40. To date, Czechoslovakia has paid $2,965.40 and $3,008.37 on the respective awards.

2. The Tripartite Commission was organized in 1946, in order to implement Part III of the Paris Reparation Agreement entered into by the Western Allies following World War II. Part III established a plan for the pro rata distribution of monetary gold removed by the Germans from the participating countries during the war. Pursuant to this plan, the Tripartite Commission allocated to Czechoslovakia more than 28 metric tons of gold; less than 10 metric tons of gold have actually been delivered to that country.

3. *Z. & F. Assets Realization Corp. v. Hull*, 72 U.S.App.D.C. 234, 114 F.2d 464, 472 (1940), *aff'd* 311 U.S. 470, 61 S.Ct. 351, 85 L.Ed. 288 (1941); *Aris Gloves, Inc. v. United States*, 420 F.2d 1386, 1394-95, 190 Ct.Cl. 367 (1970).

than refer to some observations in *Nielsen v. Secretary of Treasury,* 137 U.S.App.D.C. 345, 424 F.2d 833 (1970). There we rejected a much stronger claim for relief, that pressed by Cuban refugees complaining that blocking regulations had the effect of depriving them of assets in the United States in which they had beneficial (derivative) rights. The court recognized that men live in a shorter run than governments, and international arrangements are often agonizingly protracted. Yet they are part of the path of the law, and often its best hope.[4]

*Affirmed.*

---

4. We said, *inter alia* 424 F.2d at 842, 840, 845:

An important, if not the dominant, star for guiding national actions and reactions is the desire to build future areas of settlement and good will between nations to replace present areas of tension. . . .

. . . [The] prospect or at least possibility of international settlement and agreement cannot be dismissed by the courts as a nullity, or declared an inadmissible or unavailable aspect of America's foreign policy program.

. . . We also are aware that men live in a shorter run than the government, and that what may be considered only a temporary freeze by a government may be a permanent denial to the individual whose life comes to an end while the government ponders its course.

. . . While international affairs may move at a pace of bewildering rapidity, often negotiation is conducted with persistence and patience at snail's pace. Negotiation may be deferred while relationships are left to simmer without stirring, in order to strengthen any possible threads of international accord or reconciliation.